STATE of Minnesota, Respondent,

v.

Tony O. MORRIS, Appellant.

No. CX–01–1753.

Court of Appeals of Minnesota.

May 14, 2002.

John H. Bradshaw, III, Bradshaw & Bryant Law Offices, Eden Valley, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Jan F. Petersen, St. Cloud City Attorney, Matthew A. Staehling, Assistant City Attorney, St. Cloud, MN, for respondent.

Considered and decided by STONEBURNER, Presiding Judge, HARTEN, Judge, and ANDERSON, Judge.

## OPINION

HARTEN, Judge.

Appellant Tony O. Morris challenges his conviction of interference with privacy, arguing that evidence that he carried a bag with a concealed video camera into a store and surreptitiously positioned the lens underneath a woman's skirt so as to photograph her underwear, was insufficient to prove a violation of Minn.Stat. § 609.746 (2000). We affirm.

## FACTS

On 7 August 2000, at approximately 8:15 p.m., appellant Tony O. Morris was at the J.C. Penney department store located in the Crossroads Mall in St. Cloud. Justin Born, a loss prevention officer for J.C. Penney, received a customer-complaint report that a man inside the store was carrying a video camera concealed inside a black bag and was possibly using this device to videotape up the skirts of females in the store. While investigating the report, Born observed appellant veer off into the women's department and followed him. Born was about five to ten yards away when he observed appellant position the bag underneath the skirt at the back of a female customer. Born followed appellant as he exited the store into the general mall area. Born never lost sight of appellant.

Born was soon joined by mall security officers Paul McIntyre and Ryan Dobey. All three security officers saw the bag and observed the camera lens protruding from it. They stopped appellant and he immediately set the bag down and stuffed the camera lens into the bag. Appellant identified himself as a police officer and said that the camera was not stolen and that he was in the mall to get the camera repaired. Appellant was escorted to the mall security office and the St. Cloud Police Department was contacted.

While waiting for the police to arrive, appellant stated that he hoped he would only be charged with disorderly conduct so he could keep his peace officer's license. Appellant also stated that he "had gotten real close to two people." While in the security office, appellant tampered with the video camera until McIntyre took it away from him. The videotape was later found to have been torn.

Appellant was charged with interference with privacy in violation of Minn.Stat. § 609.746 (2000). The St. Cloud city prosecutor later filed an additional charge of disorderly conduct against appellant. Appellant pleaded not guilty and waived his right to a jury trial. On 18 July 2001, a court trial was held before the district court. The state offered the seized and repaired videotape as Trial Exhibit 8. Appellant stipulated at trial that the videotape did capture pictures of S.L.H.'s underpants as they were filmed underneath her skirt. The videotape was viewed by the district court and by S.L.H. S.L.H. testified that at the time of the incident she was working as a sales clerk at J.C. Penney, that she had viewed the videotape, that she was depicted on the videotape, and that she had not given appellant, nor anyone else, permission to look up her skirt. The district court summarized the videotape evidence as follows:

The videotape clearly demonstrated that the camera had been placed under

S.L.H.'s skirt, and that film had been taken of her underpants, which directly cover her intimate parts. In fact, it is obvious that the camera was placed under her skirt several different times, and that many such pictures were taken.

At the close of evidence, the district court took the matter under advisement. On 9 August 2001, the district court issued its findings of fact, conclusions of law, and order, finding appellant guilty of interference with privacy and not guilty of disorderly conduct. Appellant was sentenced to 90 days in jail and a fine of $1,000. Execution of the sentence was stayed on the conditions that appellant serve ten days in jail, pay $300 of the fine, and be on probation for two years. The entire sentence was stayed pending appeal. This appeal followed.

### ISSUE

Did appellant violate Minn.Stat. § 609.746, subd. 1(d) (2000)?

### ANALYSIS

■■■ Whether a statute has been properly construed is a question of law subject to de novo review. *State v. Murphy*, 545 N.W.2d 909, 914 (Minn.1996). Appellant argues that Minn.Stat. § 609.746, subd. 1(d) (2000), does not apply to his conduct in this case. He argues that he did not violate the statute and that he should have been found not guilty as a matter of law. We disagree.

Minn.Stat. § 609.746, subd. 1(d), provides:

A person is guilty of a misdemeanor who:

(1) surreptitiously installs or uses any device for observing, photographing, recording, amplifying, or broadcasting sounds or events through the window or other aperture of a sleeping room in a hotel, as defined in section 327.70, subdivision 3, a tanning booth, or other place where a reasonable person would have an expectation of privacy and has exposed or is likely to expose their intimate parts, as defined in section 609.341, subdivision 5, or the clothing covering the immediate area of the intimate parts; and

(2) does so with intent to intrude upon or interfere with the privacy of the occupant.

"Words and phrases are construed according to rules of grammar and according to their common and approved usage." Minn.Stat. § 645.08(1) (2000). "Aperture" is defined as

1. An opening, such as a hole, gap, or slit. 2. A [usually] adjustable opening in an optical instrument, such as a camera, that limits the amount of light that can enter.

*The American Heritage College Dictionary* 62 (3d ed.1997). "Place" is defined as

1.a. A bounded area; a portion of space. b. Room or space, esp. adequate space. 2.a. The given portion of space occupied by or allocated to a person or thing. b. A building or an area set aside for a specified purpose.

*The American Heritage College Dictionary* 1043 (3d ed.1997).

The district court stated in its memorandum:

[Appellant] cannot complain that the entire statute does not apply to him. Clearly, he surreptitiously photographed the clothing covering the intimate parts of [S.L.H.'s] body (and others as well). [Appellant] obviously intended to intrude upon the privacy of these persons. [Appellant's] suggestion of the absence of a "window or other aperture," and the consequential assertion that an aperture

must be an "opening" like a window in a sleeping room, hotel, or tanning booth, is a red herring. Clearly, every camera has, and effectively is, an aperture.

The area under a skirt (or, for that matter, a Scotsman's kilt; the statute is gender neutral) *is* a place or location. It is spatial, not conceptual. By reason of the act of wearing of a covering, the person has defined a spatial location, associated with his or her intimate parts, as a zone of privacy.

It necessarily follows that [appellant] has, by reason of surreptitious, intentional intrusions into that location with an aperture, committed the crime complained of.

Appellant surreptitiously used the device of a video camera to photograph the clothing covering the immediate area of the intimate parts of S.L.H.'s body through the aperture of his camera, and through the opening (aperture) in S.L.H.'s skirt, a place where a reasonable person has an expectation of privacy, and he committed these acts with the intent to intrude upon or interfere with S.L.H.'s privacy. We agree with the district court's construction of the statute.

■ Appellant also argues that another subsection of the statute, Minn.Stat. § 609.746, subd. 1(f) (2000), exempts from prosecution *any* surreptitious observation and/or recording that occurs in a commercial establishment. Minn.Stat. § 609.746, subd. 1(f), provides:

Paragraphs (b) and (d) do not apply to law enforcement officers or corrections investigators, or to those acting under their direction, while engaged in the performance of their lawful duties. Paragraphs (c) and (d) do not apply to conduct in: (1) a medical facility; or (2) a commercial establishment if the owner of the establishment has posted conspicuous signs warning that the premises are under surveillance by the owner or the owner's employees.

Appellant contends that this exemption is not limited to owners or the owner's employees. Both S.L.H. and Born testified that J.C. Penney uses surveillance methods, including cameras. Appellant argues that paragraph (f) excludes his conduct from the statute because it took place in a commercial establishment that uses surveillance methods.

Minn.Stat. § 645.16 (2000) provides in part:

The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions.

When, as here, "the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters," the "consequences of a particular interpretation." Minn.Stat. § 645.16.[1] As the state points out, appellant's interpretation of this exception would afford "unlimited opportunities for

1. When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.

When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters:

(1) The occasion and necessity for the law;

(2) The circumstances under which it was enacted;

(3) The mischief to be remedied;

(4) The object to be attained;

(5) The former law, if any, including other laws upon the same or similar subjects;

(6) The consequences of a particular interpretation;

(7) The contemporaneous legislative history; and

anyone, voyeurs and business owners alike, to surreptitiously invade the privacy of another so long as the invasion occurs in a commercial establishment." Appellant's interpretation of Minn.Stat. § 609.746, subd. 1(f), would lead to an absurd result. "In ascertaining the intention of the legislature" we may presume that the "legislature does not intend a result that is absurd." Minn.Stat. § 645.17 (2000).[2] Appellant was not engaged in the performance of a lawful duty, nor was he an owner or an owner's employee at the time he engaged in these acts. Accordingly, we conclude that Minn. Stat. § 609.746, subd. 1(f), does not exempt appellant from prosecution for interference with privacy.

## DECISION

Because appellant surreptitiously positioned a video camera lens underneath S.L.H.'s skirt, a place where S.L.H. had a reasonable expectation of privacy, so as to photograph the clothing covering the immediate area of the intimate parts of her body, with the intent to intrude upon or interfere with her privacy, he was lawfully found guilty of interference with privacy in violation of Minn.Stat. § 609.746, subd. 1(d) (2000).

**Affirmed.**

---

(8) Legislative and administrative interpretations of the statute.

Minn.Stat. § 645.16 (2000).

2. In ascertaining the intention of the legislature the courts may be guided by the following presumptions:

(1) The legislature does not intend a result that is absurd, impossible of execution, or unreasonable;

(2) The legislature intends the entire statute to be effective and certain;

(3) The legislature does not intend to violate the constitution of the United States or of this state;

(4) When a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language; and

(5) The legislature intends to favor the public interest as against any private interest.

Minn.Stat. § 645.17 (2000).